**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION AT DAYTON**

MICHAEL TRUEAX, :

              Plaintiff,

   -vs-

MICHAEL J. ASTRUE,
COMMISSIONER OF
SOCIAL SECURITY,
              Defendant. :

Case No. 3:08-cv-103

District Judge Thomas M. Rose
Magistrate Judge Michael R. Merz

## REPORT AND RECOMMENDATIONS

Plaintiff brought this action pursuant to 42 U.S.C. §405(g) and 42 U.S.C. §1381(c)(3) as it incorporates §405(g), for judicial review of the final decision of Defendant Commissioner of Social Security (the "Commissioner") denying Plaintiff's application for Social Security benefits. The case is now before the Court for decision after briefing by the parties directed to the record as a whole.

Judicial review of the Commissioner's decision is limited in scope by the statute which permits judicial review, 42 U.S.C. §405(g). The Court's sole function is to determine whether the record as a whole contains substantial evidence to support the Commissioner's decision. The Commissioner's findings must be affirmed if they are supported by "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971), *citing, Consolidated Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938); *Landsaw v.*

*Secretary of Health and Human Services*, 803 F.2d 211, 213 (6th Cir. 1986). Substantial evidence is more than a mere scintilla, but only so much as would be required to prevent a directed verdict (now judgment as a matter of law), against the Commissioner if this case were being tried to a jury. *Foster v. Bowen*, 853 F.2d 483, 486 (6th Cir. 1988); *NLRB v. Columbian Enameling & Stamping Co.*, 306 U.S. 292, 300 (1939).

In deciding whether the Commissioner's findings are supported by substantial evidence, the Court must consider the record as a whole. *Hepner v. Mathews*, 574 F.2d 359 (6th Cir. 1978); *Houston v. Secretary of Health and Human Services*, 736 F.2d 365 (6th Cir. 1984); *Garner v. Heckler*, 745 F.2d 383 (6th Cir. 1984). However, the Court may not try the case *de novo*, resolve conflicts in evidence, or decide questions of credibility. *Garner, supra.* If the Commissioner's decision is supported by substantial evidence, it must be affirmed even if the Court as a trier of fact would have arrived at a different conclusion. *Elkins v. Secretary of Health and Human Services*, 658 F.2d 437, 439 (6th Cir. 1981).

To qualify for disability insurance benefits (SSD), a claimant must meet certain insured status requirements, be under age sixty-five, file an application for such benefits, and be under a disability as defined in the Social Security Act, 42 U.S.C. § 423. To establish disability, a claimant must prove that he or she suffers from a medically determinable physical or mental impairment that can be expected to result in death or has lasted or can be expected to last for a continuous period of not less than twelve months. 42 U.S.C. §423(d)(1)(A). Secondly, these impairments must render the claimant unable to engage in the claimant's previous work or in any other substantial gainful employment which exists in the national economy. 42 U.S.C. §423(d)(2).

To qualify for supplemental security benefits (SSI), a claimant must file an

application and be an "eligible individual" as defined in the Social Security Act. 42 U.S.C. §1381a. With respect to the present case, eligibility is dependent upon disability, income, and other financial resources. 42 U.S.C. §1382(a). To establish disability, a claimant must show that the claimant is suffering from a medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months. 42 U.S.C. §1382c(a)(A). A claimant must also show that the impairment precludes performance of the claimant's former job or any other substantial gainful work which exists in the national economy in significant numbers. 42 U.S.C. §1382c(a)(3)(B). Regardless of the actual or alleged onset of disability, an SSI claimant is not entitled to SSI benefits prior to the date that the claimant files an SSI application. *See,* 20 C.F.R. §416.335.

The Commissioner has established a sequential evaluation process for disability determinations. 20 C.F.R. §404.1520 . First, if the claimant is currently engaged in substantial gainful activity, the claimant is found not disabled. Second, if the claimant is not presently engaged in substantial gainful activity, the Commissioner determines if the claimant has a severe impairment or impairments; if not, the claimant is found not disabled. Third, if the claimant has a severe impairment, it is compared with the Listing of Impairments, 20 C.F.R. Subpart P, Appendix 1 (1990). If the impairment is listed or is medically equivalent to a listed impairment, the claimant is found disabled and benefits are awarded. 20 C.F.R. §404.1520(d). Fourth, if the claimant's impairments do not meet or equal a listed impairment, the Commissioner determines if the impairments prevent the claimant from returning to his regular previous employment; if not, the claimant is found not disabled. Fifth, if the claimant is unable to return to his regular previous employment, he has established a *prima facie* case of disability and the burden of proof shifts to the

Commissioner to show that there is work which exists in significant numbers in the national economy which the claimant can perform. *Bowen v. Yuckert,* 482 U.S. 137, 145, n.5 (1987).

Plaintiff filed an application for child's SSI in 1992, and received benefits apparently on the basis that he was mentally retarded. *See,* Tr. 19. Plaintiff's benefits were terminated either because Plaintiff turned 18 years old or because he started working. *See,* Tr. 359. Plaintiff then filed an application for SSD in 2000, which was denied in a notice dated November 28, 2000. (Tr. 39-42).

Plaintiff again filed an application for SSD as well as an application for SSI on March 5, 2004, alleging disability from November 28, 2000, due to ADD and stress. (Tr. 52-65; 313). Plaintiff's applications were denied initially and on reconsideration. (Tr. 43-51). A hearing was held before Administrative Law Judge James Knapp, (Tr. 345-76), who determined that Plaintiff is not disabled. (Tr. 12-17). The Appeals Council denied Plaintiff's request for review, (Tr. 4-6), and Judge Knapp's decision became the Commissioner's final decision.

In determining that Plaintiff is not disabled, Judge Knapp found that Plaintiff met the insured status requirements of the Act through September 30, 3005. (Tr. 25, finding 1). Judge Knapp then found that Plaintiff has severe borderline intellectual functioning, a generalized anxiety disorder, and an intermittent explosive disorder, but that he does not have an impairment or combination of impairments that meets or equals the Listings. *Id.*, findings 3, 4. Judge Knapp then found that Plaintiff lacks the residual functional capacity to perform jobs that require reading, writing, or math skills above the third-grade level, follow complex instructions, have any contact with members of the general public, have greater than occasional contact with co-workers, perform jobs which involve over-the shoulder supervision, or do other than low stress work activity. (Tr. 26,

4

finding 6). Judge Knapp then used section 204.00 of the Grid as a framework for deciding, coupled with a vocational expert's (VE) testimony and concluded that there is a significant number of jobs in the economy that Plaintiff is capable of performing. *Id.*, finding 12. Judge Knapp concluded that Plaintiff is not disabled and therefore not entitled to benefits under the Act. (Tr. 27).

In his Statement of Errors, Plaintiff challenges the Commissioner's findings with respect to his alleged mental impairments. (Doc. 7). Therefore, the Court will focus its review on the mental health evidence.

Plaintiff's school records reveal that Plaintiff underwent a psychological evaluation in 1989, when he was 14 ½ years old. (Tr. 187-88). Plaintiff underwent the evaluation due to significant behavioral and adjustment difficulties along with severe academic underachievement while in regular education classes. *Id.* The school psychologist reported that he administered the Wechsler Intelligence Scale for Children - R (WISC-R), which revealed that Plaintiff's verbal IQ was 77, his performance IQ was 75, and his full scale IQ was 74. *Id.* The psychologist also reported that the results of the Bender-Gestalt indicated an age equivalent of 6 ½-7 years. *Id.* The psychologist recommended that Plaintiff re-enter in to the special education program. *Id.*

On October 27, 1992, Plaintiff underwent a three year psychological re-evaluation when he was eighteen years old. (Tr. 184-86). At that time, the school psychologist reported that Plaintiff functioned within the borderline range of intellectual ability, his reading skills fell at a high fourth-grade level, and his math skills at a high fifth-grade level. *Id.* The psychologist also reported that Plaintiff looked after his own health and had performed simple jobs in the past to earn spending money, he made his own bed routinely, and that he cleaned his own room. *Id.* The psychologist noted that Plaintiff had good attendance at school and arrived at the appropriate time, he listened to

5

the radio, watched television for practical day-to-day information, and that he played drums with a group of friends who played musical instruments. *Id.* The psychologist also noted that Plaintiff apologized for mistakes and was able to remember birthdays. *Id.* The school psychologist concluded that Plaintiff showed some delays and fell within the low average range in terms of cognitive ability, that his visual motor integration was rated at an age equivalent of seven years and two months, and that socially Plaintiff showed some delays in communication skills but seemed to have adequate skills in terms of daily living and socialization. *Id.* Noting that Plaintiff was interested in becoming a mechanic, the psychologist recommended that vocational training be considered as an option for Plaintiff. *Id.*

Examining psychologist Dr. Payne reported on October 20, 1992, that Plaintiff was 18 years old, in the tenth grade, and that he had a B average in the special education program. (Tr. 303-08). Dr. Payne noted that Plaintiff reported that he had been sexually abused by his stepmother when he was 13 years old, that he had difficulties with his mother, and that they participated in a "Tough Love" program but that they infrequently attended. *Id.* Dr. Payne also noted that Plaintiff's mother reported that Plaintiff had been permitted to travel to Florida in August, 1992, to see her brother, and was able to use public transportation wherever he wanted to go. *Id.* Dr. Payne reported that Plaintiff's facial expression showed mild anxiety, that he was fairly cooperative, he admitted to outbursts of temper resulting in slammed doors, holes in the walls, throwing things, and a hole in the basement door, that Plaintiff was a very concrete thinker who used "a lot of denial", and that Plaintiff had low insight into his psychological adjustment. *Id.* Dr. Payne also reported that Plaintiff's memory was fair and his judgment was in the borderline range. *Id.* Dr. Payne reported further that Plaintiff's verbal IQ was 77, his performance IQ was 69, and his full scale IQ was 73,

6

that he had put forth reasonably good effort and the results obtained on the IQ test were valid, that Plaintiff was at the third-grade level for reading recognition and fourth-grade level for math computation, and that the full scale score placed Plaintiff in the borderline range of intellectual functioning. *Id.* Dr. Payne reported that the Bender-Gestalt indicated that Plaintiff had an age equivalent score of nine years, the Vineland Adaptive Behavior Scales suggested that Plaintiff was in the borderline range for daily living activities and in the severely impaired range for communication skills and socialization skills, and that it was possible that Plaintiff's mother had underestimated some of his abilities although she was firm in her assessments. *Id.* Dr. Payne identified Plaintiff's diagnoses as an adjustment disorder with mixed disturbance of emotions and conduct and borderline intelligence and he assigned Plaintiff a GAF of 50. *Id.* Dr. Payne opined that Plaintiff was able to follow simple job instructions but would have difficulty with more complex instructions, that his abilities for attention and concentration and to interact with others were moderately impaired, and that he had weak abilities to tolerate stress. *Id.*

Examining psychologist Dr. Brown reported on February 15, 1999, that Plaintiff was 24 years old, quit school in the 10th grade, was in special education/developmentally handicapped classes, his affect and demeanor were appropriate, and there were signs of anxiety during the evaluation. (Tr. 331-37). Dr. Brown also reported that Plaintiff was slightly distracted, oriented, had an adequate contact with reality, was able to follow through with tasks after initial directions, and that his overall ability to manage his daily living activities was adequate while his ability to make reasonable life decisions was poor. *Id.* Dr. Brown noted that Plaintiff's verbal IQ was 68, his performance IQ was 57, and his full scale IQ was 61, that he read at the 1.7 grade level, that based on the evaluation, Plaintiff could have problems with manic behavior from time to time with

reoccurring periods of depression, that he was functionally illiterate, and that he had severe vocational limitations. *Id.* Dr. Brown also noted that Plaintiff could follow simple directions only on the job, that his ability to sustain concentration and attention as well as his ability to interact with others were poor, and that if Plaintiff were granted benefits, they should be given to a custodian. *Id.* Dr. Brown identified Plaintiff's diagnoses as bipolar disorder most recent episode mixed, borderline intellectual functioning, and schizoid personality disorder; he assigned Plaintiff a GAF of 55. *Id.*

Examining psychologist Dr. Schulz reported on October 9, 2000, that Plaintiff was 25 years old, completed the 10th grade, attended developmentally handicapped education classes, that there was nothing remarkable about his manner of speech, his affect was appropriate and congruent, and his motor activity was calm. (Tr. 189-94). Dr. Schulz also reported that Plaintiff's long-term memory was within the adequate range, he was oriented, alert, responsive, did not have any signs of confusion, his judgment appeared sufficient to make life decisions, and that he would be able to manage any benefits. *Id.* Dr. Schulz noted that Plaintiff's MMPI was invalid and he identified Plaintiff's diagnoses as depressive disorder NOS, anxiety disorder NOS, personality disorder NOS, and borderline intellectual functioning; he assigned Plaintiff a GAF of 56. *Id.* Dr. Schulz opined that Plaintiff's ability to understand/execute simple instructions was in the borderline range, that he should be able to perform in the simple, moderate, and probably low complex task range, that there were concerns about his ability to demonstrate ongoing attention/concentration in a work setting due to personality disorder features, depressive, and anxiety symptoms, that he may have disruptive problems within a work setting due to personality disorder features, and that he would probably have disruptive problems secondary to characterological disorder features and depressive and anxiety symptoms particularly with work perseverance over prolonged periods of

8

time including an eight-hour day or five-day work week. *Id.*

Examining psychologist Dr. Flexman reported on July 14, 2004, that Plaintiff was 29-years old, had an 11th grade education in regular and learning disability classrooms, his clothing was unclean but appropriate, facial expressions and body movements were normal, speech was appropriate, tone of his voice was tense, he was oriented to person and place but not to time, and that his affect was appropriate. (Tr. 213-16). Dr. Flexman also reported that Plaintiff's attention span was poor as was his effort, his concentration was poor as was his effort, his response style during the assessment was suboptimal, his reliability was poor and suggested significant malingering, his intellectual functioning was below average, and his judgment was poor. *Id.* Dr. Flexman identified Plaintiff's diagnoses as bi-polar disorder, malingering, borderline personality disorder, and borderline intellectual functioning, and he assigned Plaintiff a GAF of 50. *Id.* Dr. Flexman opined that Plaintiff was able to handle his own finances, his ability to understand, remember, and carry out short simple instructions was slightly impaired, his ability to make judgments for simple work-related decisions was moderately impaired, his difficulties with sustained attention and concentration were slight, and his ability to interact with others was moderately to markedly impaired. *Id.*

Plaintiff received mental health treatment at Samaritan Behavioral Health from February 11, 2004, through March 17, 2004. (Tr. 230-302). Plaintiff was self-referred in February 2004, because he and his girlfriend agreed that he had severe temper and anger problems. *Id.* Plaintiff lived with his girlfriend of six years, and their two children, ages two years and ten months, and his girlfriend was due to have another baby in May. *Id.* At the time of Plaintiff's initial evaluation, it was noted by Sheryl Beard, MS, LPCC, that Plaintiff's affect was constricted, his intelligence was estimated as average, his clothes were stained and torn, he appeared anxious, and

9

that he was mildly restless. *Id.* Ms. Beard also noted that Plaintiff's diagnoses were major depressive disorder, recurrent and severe, without psychotic features, generalized anxiety disorder, posttraumatic stress disorder (provisional), history of cocaine abuse, history of cannabis dependence, and history of alcohol abuse, and she assigned Plaintiff a GAF of 50. *Id.*

On May 5, 2004, Plaintiff was terminated from treatment due to poor attendance and not calling to cancel. *Id.* At that time, it was noted that Plaintiff was last seen on March 17, 2004, that his care consisted of standard outpatient counseling and medications, and that his participation was inconsistent. *Id.*

Plaintiff returned to Samaritan Behavioral Health in August, 2004, for mental health treatment. *Id.* Ms. Beard noted in September, 2004, that Plaintiff reported that the medications were helping and that he felt less irritable and more in control. *Id.* Ms. Beard reported on October 14, 2004, that Plaintiff had a learning disorder, lived with his girlfriend and their three children, that he had quit a job he held previously, walked off the job, and cussed out his manager, that he could not tolerate stresses because of his anxiety and quick temper, and that he had no problems with food preparation, household chores, personal hygiene, banking and bill-paying, and that his hobby was fishing. *Id.* Ms. Beard also reported that Plaintiff's treatment was counseling and medications, and that Dr. Atiq did not want to evaluate Plaintiff's daily activities until she knew him better. *Id.*

Plaintiff was terminated from treatment in January, 2005, for poor attendance. *Id.* It was noted at that time that Plaintiff had last been seen on November, 22, 2004. *Id.*

The medical advisor (MA) testified at the hearing that Plaintiff's diagnoses were best identified as major depression, intermittent explosive disorder, and generalized anxiety disorder, that he had, at worst, mild limitations in his abilities to perform activities of daily living, moderate

limitations in his social functioning, moderate limitations in his abilities to attend and concentrate, and that he would not be able to follow complex instructions. (Tr. 361-69). The MA testified further that Plaintiff could perform repetitive work involving limited teamwork and limited close supervision, no public contact, and no production standards, time limits, or strict time standards, and no production quotas. *Id.*

Plaintiff alleges in his Statement of Errors that the Commissioner erred by failing to find that he satisfies Listing 12.05C. (Doc. 7).

A claimant has the burden of proving that his or her impairments meet or equal the Listings. *Bowen v. Yuckert,* 482 U.S. 319 (1987). In order to meet the requirements of a listed impairment, the claimant must meet all of the elements of the listed impairment. *See, Hale v. Secretary of Health and Human Services,* 816 F.2d 1078, 1083 (6th Cir. 1987), *citing, King v. Heckler,* 742 F.2d 968, 973 (6th Cir. 1984) (lack of evidence indicating the existence of all the requirements of Listing 1.05C provides substantial evidence to support the Secretary's finding that claimant did not meet the Listing). It is not sufficient to come close to meeting the requirements of a Listing. *Dorton v. Heckler,* 789 F.2d 363, 367 (6th Cir. 1989) (Secretary's decision affirmed where medical evidence almost establishes a disability under Listing 4.04(D)).

> Listing 12.05 reads in part:
>
> *Mental Retardation and Autism:* Mental retardation refers to a significantly sub average general intellectual functioning with deficits in adaptive behavior initially manifested during the developmental period (before age 22)....
> The required level of severity for this disorder is met when the requirements in A, B, C, or D are satisfied.
> ...
>
> C. A valid verbal, performance, or full scale IQ of 60 through 70 and a physical or other mental impairment imposing additional and

significant work-related limitation of function;

...

20 C.F.R. Pt. 404, Subpt. P, App. 1 §12.05.

The regulations provide that a claimant will meet the listing for mental retardation only "[i]f [the claimant's] impairment satisfies the diagnostic description in the introductory paragraph *and* one of the four sets of criteria...." *Foster v. Halter,* 279 F.3d 348 (6th Cir. 2001) (citations omitted)(emphasis in original).

There are several IQ test results contained in the record, specifically there are results from 1989, 1992, and1999. Some of those scores arguably fall within the parameters of Listing 12.05C. For example, in 1992, Plaintiff's performance IQ was reported as 69, and his IQ scores from 1999, fall between 57 and 68. However, none of the mental health experts of record diagnosed Plaintiff with mental retardation. That, of course, is fatal to Plaintiff's claim that he satisfied Listing 12.05C. *See, Foster, supra.*

In addition, as noted by Judge Knapp, it is questionable as to whether the 1999 IQ scores were truly indicative of Plaintiff's intellectual abilities. First, as noted by Dr. Flexman, Plaintiff's motivation was questionable. In addition, Dr. Flexman opined that Plaintiff engaged in significant malingering and that his effort was poor. Further, the record contains no medically-based explanation for the deterioration in Plaintiff's IQ scores over the period 1989 to 1999. Finally, even Dr. Brown who reported the lowest of the IQ scores declined to diagnose Plaintiff with mental retardation and instead, identified one of Plaintiff's diagnoses as borderline intellectual functioning.

Plaintiff argues that *res judicata* requires the Commissioner to find that he is mentally retarded. Plaintiff's position is that he previously received child's SSI benefits presumably on the basis of the performance IQ of 69 reported by Dr. Payne and therefore the Commissioner is bound

by that previous finding.

In *Drummond v. Commissioner of Social Security,* 126 F.3d 837, 842 (6th Cir. 1997), the Sixth circuit held that the Commissioner is bound by a prior, final decision concerning a claimant's entitlement to benefits "absent changed circumstances". Therefore, the question is whether there are "changed circumstances" which make the doctrine of *res judicata* inapplicable in this matter.

Contrary to Plaintiff's argument, *res judicata* did not require the Commissioner to find that Plaintiff is mentally retarded. Even assuming *arguendo* that Plaintiff had previously been awarded benefits on the basis of mental retardation, there is new evidence in the record sufficient to establish "changed circumstances".

First, as noted above, not one of the mental health experts of record have diagnosed Plaintiff with mental retardation. Nevertheless, the record reveals that Plaintiff's motivation and effort during testing and mental evaluations were suspect. As noted above, there is a suggestion that Plaintiff engaged in malingering. Further, the record reveals that since 1992, when Dr. Payne reported Plaintiff's IQ scores, Plaintiff's level of functioning has been above that of someone with mental retardation. For example, Plaintiff helps care for his three children, his ability to manage his daily living activities is adequate, he manages his finances and pays bills, uses public transportation, performs household chores, goes shopping, and goes fishing. In addition, Plaintiff has been employed in various jobs including security guard, shipping and receiving, and cook and he has left those jobs due to conflicts with others and not because of a cognitive inability to perform the jobs.

Under these facts, the Commissioner did not err by failing to find that Plaintiff satisfies Listing 12.05C.

Our duty on appeal is not to re-weigh the evidence, but to determine whether the decision below is supported by substantial evidence. *See, Raisor v. Schweiker,* 540 F.Supp. 686 (S.D.Ohio 1982). The evidence "must do more than create a suspicion of the existence of the fact to be established. ... [I]t must be enough to justify, if the trial were to a jury, a refusal to direct a verdict when the conclusion sought to be drawn from it is one of fact for the jury." *LeMaster v. Secretary of Health and Human Services,* 802 F.2d 839, 840 (6th Cir. 1986), *quoting, NLRB v. Columbian Enameling & Stamping Co.,* 306 U.S. 292, 300 (1939). The Commissioner's decision in this case is supported by such evidence.

It is therefore recommended that the Commissioner's decision that Plaintiff was not disabled and therefore not entitled to benefits under the Act be affirmed.

December 19, 2008.

*s/ Michael R. Merz*
United States Magistrate Judge

## NOTICE REGARDING OBJECTIONS

Pursuant to Fed.R.Civ.P. 72(b), any party may serve and file specific, written objections to the proposed findings and recommendations within ten days after being served with this Report and Recommendations. Pursuant to Fed.R.Civ.P. 6(e), this period is automatically extended to thirteen days (excluding intervening Saturdays, Sundays, and legal holidays) because this Report is being served by one of the methods of service listed in Fed.R.Civ.P. 5(b)(2)(B), (C), or (D) and may be extended further by the Court on timely motion for an extension. Such objections shall specify the portions of the Report objected to and shall be accompanied by a memorandum in support of the objections. If the Report and Recommendations are based in whole or in part upon matters occurring of record at an oral hearing, the objecting party shall promptly arrange for the transcription of the record, or such portions of it as all parties may agree upon or the Magistrate Judge deems sufficient, unless the assigned District Judge otherwise directs. A party may respond to another party's objections within ten days after being served with a copy thereof. Failure to make objections in accordance with this procedure may forfeit rights on appeal. *See, United States v. Walters,* 638 F.2d 947 (6th Cir. 1981); *Thomas v. Arn,* 474 U.S. 140, 106 S.Ct. 466, 88 L.Ed.2d 435 (1985).